**In re H. P. TOOL MANUFACTURING CORPORATION, Debtor.**

**ACCEPTANCE ASSOCIATES OF AMERICA, INC., Plaintiff,**

v.

**Fred ZIMMERMAN, Trustee,**

**and**

**H. P. Tool Manufacturing Company, Defendants.**

**Bankruptcy No. 80–00657G.**
**Adv. No. 81–0186G.**

United States Bankruptcy Court, E. D. Pennsylvania.

July 20, 1981.

Lawrence R. Lesser, Lesser & Kaplin, P. C., Blue Bell, Pa., for plaintiff, Acceptance Associates of America, Inc.

Lawrence J. Lichtenstein, Sklar, Lichtenstein & Sklar, P. C., Philadelphia, Pa., for trustee/defendant, Fred Zimmerman.

Fred Zimmerman, Trustee, defendant.

Jon M. Adelstein, Philadelphia, Pa., for debtor/defendant, H. P. Tool Manufacturing Corp.

OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue before us is whether a secured creditor is entitled to a prepayment penalty

---

and attorney's fees out of the proceeds of the trustee's sale of the property of the debtor in which the creditor had a security interest. We conclude that the secured creditor is not entitled to the prepayment penalty under the terms of its contract with the debtor. However, if properly proven, we agree that the secured creditor would be entitled to reasonable attorney's fees under § 506(b) and (c) of the Bankruptcy Code ("the Code") to the extent that the proceeds realized can cover that cost.

The facts of the instant case are as follows:[1] H.P. Tool Manufacturing Corporation ("the debtor") filed a petition for a reorganization under chapter 11 of the Code on February 8, 1980, and a trustee was thereafter appointed. Prior thereto, on November 2, 1979, the debtor had executed an installment note in the amount of $85,500 payable to Acceptance Associates of America, Inc. ("AAA") and had granted a mortgage in certain of its real property and a security interest in its equipment to AAA. The mortgage and security interest were duly recorded.

Thereafter, the debtor defaulted on the note by failing to make the payment due on April 2, 1980, and all payments due thereafter. · By agreement of the parties, the assets of the debtor were exposed to public auction by the trustee on August 19, 1980. The gross proceeds from the sale of the property in which AAA had an interest amounted to $75,333.00. By stipulation filed by the parties and approved by us on March 9, 1981, the trustee agreed to pay to AAA the amount claimed by it as principal ($46,659.02) and interest ($5,605.56).

AAA has filed the instant complaint seeking a determination that it is due, in addition to the above principal and interest, an amount for prepayment penalty ($16,570.49) and an amount for attorney's fees ($6,883.60). The trustee denies that these sums are due AAA. The issue was presented to us on briefs of the parties.

This case is governed by the provisions of § 506(b) and (c) of the Code which provide:

> (b) To the extent that an allowed secured claim is secured by property the value of which, after any recover under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided under the agreement under which such claim arose.

> (c) The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

The gross proceeds of the sale of the property in this case were $75,333 from which must be deducted the principal amount due AAA of $46,659.02 and $6,729.45 due to General Electric Credit Corporation which had a first lien on one of the pieces of equipment subject to AAA's security interest. Thereafter, pursuant to § 506(c) the trustee is entitled to the costs of the sale of that property ($9,213.46) since the sale by the trustee clearly benefited AAA.[2]

From the balance of $12,731.07 remaining after the above deductions, § 506(b) allows AAA to deduct the interest of $5,605.56 and any other reasonable fees or costs which are provided for in the agreement pursuant to which its secured status arose. That agreement in the instant case is the installment note, mortgage and security agreement executed by the debtor and AAA.

With respect to AAA's claim for prepayment penalty, the installment note provides:

> Payee, its successors and assigns may, as its sole discretion upon the nonpay-

---

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

2. AAA benefited from the trustee's services because AAA was thereby relieved from having to proceed with judicial or other actions to enforce its lien on that property. In addition, AAA, by agreeing to allow the trustee to sell that property must have understood that the trustee would be entitled to compensation for its services.

ment of any installment as above set forth, immediately declare the entire unpaid balance immediately due and payable with interest as aforesaid. Thereafter, maker may prepay the full balance hereof subject to giving payee thirty (30) days' written notice of intention to prepay, and upon such prepayment, payee will rebate any unearned interest or discount computed on the basis of one-half (½) the rule of 78's method.

The prepayment penalty, which AAA seeks herein, results from the last clause above which requires AAA to return to the debtor only half of the unearned interest, allowing it to keep the other half as a penalty for the prepayment. However, with respect to that penalty clause, the last sentence of the installment note provides:

> This contract is amended to read that there shall be no prepayment penalty for the first thirty (30) months of this contract.

Since AAA has received prepayment of its claim within the first thirty months of that contract, we conclude that the last sentence of the contract controls and AAA is not entitled to any prepayment penalty.

AAA argues, however, that in order for the debtor (or trustee) to exercise its right to prepay the amount due, it must meet certain conditions: (1) it must give thirty days' written notice of its intention to prepay; (2) it must not have been in default before it prepays; and (3) there must have been actual prepayment. We agree with AAA's assertion that the first condition must be met. However, we disagree with AAA's assertion that it has not been met herein. Clearly AAA was notified, at least by the date of the sale August 19, 1980, that the trustee intended to sell the debtor's property and prepay the obligation out of the proceeds. Further, even if AAA did not receive written notice of the trustee's intentions, we find that AAA waived that condition when it agreed in the stipulation approved on March 9, 1981, to be so prepaid.

With respect to the second condition which AAA places on the right to prepay, we conclude that it is not a part of the agreement of the parties. In fact, our reading of the main part of the contract cited above leads us to the conclusion that the debtor *may* prepay after it has defaulted on the note. The first sentence of the above-cited provision states that AAA may declare the full balance due if the debtor defaults. The next sentence states "Thereafter" (which we interpret to mean after the debtor defaults and after AAA declares the entire balance due) the debtor may prepay that balance. Consequently, we disagree with AAA's interpretation of the contract and conclude that the debtor (and trustee) did have the right to prepay its obligation to AAA.

With respect to AAA's third condition— that there must have been actual prepayment—we conclude that, contra to AAA's assertions, that condition has been met herein. AAA asserts that there was no prepayment here because, on default of the debtor, it declared the entire balance due pursuant to the above terms of the contract. Thereafter, when the debtor (through the trustee) paid that obligation, it was not a prepayment but simply the payment of what was due at that time. We disagree with that interpretation of the agreement for the same reasons as we disagreed with AAA's assertion about the second condition. As we read the contractual provisions in question herein, the contract permits the debtor to prepay the obligation even if it is in default.

For all of the above reasons, we conclude that pursuant to the terms of the agreement between the debtor and AAA, AAA is not entitled to the prepayment penalty it claims is due it. Therefore, AAA is not entitled to that amount under § 506(b).

With respect to AAA's claim for attorney's fees, we find that the agreement between AAA and the debtor permitted AAA to assess attorney's fees and, therefore, AAA is entitled to reasonable fees under § 506(b). The installment note permits AAA to assess the debtor for collection fees up to 20% of the note. AAA seeks attorney's fees of $6,883.60 herein, which amount the trustee does not dispute and which amount can be paid out of the remainder of the proceeds of the sale ($7,125.51). But there is no evidence before us from which

we can determine the reasonableness of the attorney's fees requested by AAA. Rule 219(a) of the Rules of Bankruptcy Procedure provides that:

A person seeking compensation for services, or reimbursement of necessary expenses from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered and expenses incurred, (2) the amounts requested. . . .

And the Court of Appeals for the Third Circuit, in *In re Meade Land and Development Co., Inc.*, 527 F.2d 280 (3d Cir. 1975) and 577 F.2d 858 (3d Cir. 1978), has held that any request for attorney's fees in a bankruptcy proceeding must be supported by documents showing with sufficient specificity, the legal services performed, the amount of time spent, the difficulty of the problems addressed and the results achieved. In the case at bench there has been no application filed containing the above factors and, consequently, we are unable to determine if the attorney's fees requested herein are reasonable. By our order we will give AAA a reasonable time to remedy this procedural deficiency.