**In the Matter of KENNEDY MORT-GAGE COMPANY, Debtor.**

**The BANK OF NEW JERSEY, Plaintiff,**

v.

**Robert W. LARSON, trustee, Defendant.**

**Bankruptcy No. 81–01331.**
**Adv. No. 81–0179.**

United States Bankruptcy Court,
D. New Jersey.

Oct. 6, 1982.

Fellheimer, Eichen & Goodman by Morton R. Branzburg, Moorestown, N. J., for The Bank of New Jersey.

Greenbaum, Greenbaum, Rowe & Smith by Alan S. Naar, Woodbridge, N. J., Ravin, Katchen & Greenberg by Howard Greenberg, Newark, N. J., cocounsel to trustee.

Archer, Greiner & Read by Nona L. Ostrove, Haddonfield, N. J., for Heritage Bank, N. A. defendant-intervenor.

On Complaint Seeking Relief from the Automatic Stay of Section 362(d) of the Bankruptcy Code.

## OPINION

WILLIAM LIPKIN, Bankruptcy Judge.

The Bank of New Jersey (Bank) seeks post-petition interest and attorneys' fees for loans made to the debtor, Kennedy Mortgage Company (Kennedy), before the Petition was filed and which were set off against funds on deposit at the Bank by consent of the parties. This proceeding was begun by the Bank's complaint seeking relief from the automatic stay of Section 362(d) of the Bankruptcy Code in order to set off the debt owed to it, against the debtor's funds on deposit at the Bank at the time the Petition was filed. The following relevant facts have been stipulated by the Bank and the Trustee.

On March 9, 1981, an involuntary Petition under Chapter 7 of the Bankruptcy Code was filed against Kennedy and an order for relief was entered. On that date, the debtor owed the Bank the principal sum of $115,122.00 plus accrued interest in the amount of $1,554.15, for a total of $116,-676.15. The debtor maintained a general demand deposit account at the Bank which had a balance of $299,369.96 on that date.

As security for the loans made by the Bank to the debtor, the debtor had assigned the following four mortgages to the Bank: 1) a mortgage given by Annie B. Ford to the debtor in the original principal amount of $26,950.00, recorded on September 30, 1976, which was given in exchange for a note in the amount of $24,255.00 on 5/31/79, 2) a mortgage given by John and Carmen Jacobs to the debtor in the original principal sum of $38,900.00 recorded on December 21, 1977, which was given for a loan in the amount of $34,390.00 on 6/15/80, 3) a mortgage given by Lawrence W. and Theodora Medley to the debtor with an original principal balance of $34,500.00, which was recorded on May 5, 1978, which was given in exchange for a loan in the amount of $30,684.00 on 6/13/80, 4) a mortgage recorded March 28, 1978, given by Richard R.

Taylor and Anthony Pellegrino, Jr. to the debtor, which had an original balance of $29,000.00, which was exchanged for a loan in the sum of $25,793.00 on 6/13/80. The interest rates on these notes were 13¼% for the note dated 5/31/79 and 14½% for the other three notes.

The Bank and the Trustee have stipulated that the mortgages had the following fair market values as of November 9, 1981, 1) the Ford mortgage with an interest rate of 8.5%, a principal amount due of $26,504.45 and a fair market value of $15,637.63, 2) the Jacobs mortgage with an interest rate of 8.5%, a principal amount due of $38,312.77 and a fair market value of $22,604.53, and 3) the Medley mortgage with an interest rate of 8.75%, a principal amount due of $34,094.84 and a fair market value of $20,456.90.

The parties did not stipulate to or present any evidence of the value of the mortgage given by Taylor and Pellegrino, as of November 9, 1981. All of these mortgages are insured by the United States Government under FHA or VA programs.

Heritage Bank, a creditor of Kennedy, was allowed to intervene in this action, but it has not stipulated to any of the facts here and has not filed any briefs in support of its position. In hearings before this court, Heritage has espoused the same position as the Trustee for the debtor. This court assumes that Heritage is relying on the Trustee's arguments.

Pursuant to an order dated November 9, 1981, the parties entered into a partial settlement of the Bank's complaint. The parties agreed that the Bank could setoff the sum of $116,676.15 against the funds on deposit in the debtor's account, representing principal and interest due as of March 9, 1981. The Bank agreed to deliver all mortgage documents, which it held as collateral for the loans, to the Trustee, as well as the remaining funds in the debtor's bank accounts. However, the parties reserved the sum of $15,159.85, representing post-petition interest of $9,756.57 and attorneys' fees claimed by the Bank in the sum of $5,403.28, to be held by the Trustee in a separate interest-bearing account pending a determination as to whether the Bank or the Trustee is entitled to this money.

Although the order of this court dated November 9, 1981 reserves the sum of $9,756.57 for post-petition interest, the Stipulation of Facts filed by the parties on March 29, 1982 states that the sum of $10,576.83 is the amount of interest which accrued at the contract rate from March 9, 1981 through November 9, 1981. The amount of post-petition attorneys' fees is also unclear. Although the parties agreed that the Trustee would hold $5,403.28 for attorneys' fees, an affidavit filed March 19, 1982 by the attorney for the Bank states that the Bank is seeking reimbursement for over $10,000.00 in attorneys' fees. The affidavit also claims, "that these fees represent legal services that were reasonable and necessary and the fees charged were at the regular hourly rate of the (sic) Fellheimer, Eichen & Goodman."

During a hearing before this court, the Bank was given additional time in order to supplement the record as to precisely what time was expended by its attorneys for each task performed in this case and at what hourly rate. However, the Bank has not submitted any additional documentation as to the reasonableness of its claimed attorneys' fees or any breakdown as to what these charges represent. In a brief filed with this court on March 8, 1982 the Bank said it was seeking the sum of $20,576.82 for post-petition interest, costs and attorneys' fees; there is no breakdown of the amount sought as costs or attorneys' fees.

Section 506(b) of the Bankruptcy Code restricts the award of post-petition interest and attorneys' fees. That Section states:

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided under the agreement under which such claim arose.

The Legislative History to this Section reads in part:

Subsection (b) codifies current law by entitling a creditor with an oversecured claim to any reasonable fees, costs, or charges provided under the agreement under which the claim arose. These fees, costs and charges are secured claims to the extent that the value of the collateral exceeds the amount of the underlying claim.

(House Rep. No. 95–595, 95th Cong., 1st Sess. 356 (1977)), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6312.

Thus, under this statute, the Bank can recover only to the extent that the value of its security was greater than the amount of its claim on the date the debtor's Petition was filed. Interest could accrue up to the amount of this excess value. However, there are additional requirements for the recovery of attorneys' fees or costs, besides excess value; such fees and costs must be provided for in the agreement under which the creditor's claim arose, and the fees and costs must be reasonable.

Section 506(a) of the Bankruptcy Code defines what is meant by an "allowed secured claim" for purposes of Section 506(b), as follows:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim
. . . .

Under this Section there are two methods by which a creditor can demonstrate that it has an over-secured claim and, thus, be entitled to interest, costs and fees. The creditor must demonstrate that 1) the value of its collateral was greater than the amount of its claim on the date the Petition was filed or 2) the claim is subject to a setoff under section 553 of the Code and is secured up to the amount of the claim subject to setoff. The Bank argues that it has an over-secured claim under both of these methods. The valuation of the Bank's collateral will be discussed first.

There is no dispute that the Bank has a perfected security interest in the four mortgages covered by the assignments. The Bank argues that the value of the Ford mortgage is the sum of $24,255.00, which is the original principal amount of the note given by the Debtor. The Bank acknowledges that it has stipulated that the fair market value of this mortgage was $15,637. on November 9, 1981. However, it claims that the lower value should not be used for purposes of section 506(a) of the Code, because the mortgage is federally guaranteed. The Trustee is currently foreclosing on the Ford mortgage because payments are in default. Thus, it reasons that the Trustee will receive 100% of the mortgage principal, plus interest and collection costs, and there would be no reason to give this mortgage a lower value.

The Bank does not argue that the value of the mortgages is equal to the remaining balance due on them; nor is it clear what balance is due on the Taylor and Pellegrino mortgage, although the balances on the other 3 mortgages have been provided.

It does not appear that any payments were made on the 4 notes because the parties have stipulated that the amount due on the notes on the date the Petition was filed equaled $115,122.00, which is also equal to the original face amounts of the notes. Since the notes were in default as of the date the Petition was filed, their only value is derived from the collateral used to secure the notes. If the "value" of the mortgages is greater than the amount due on the notes, the Bank is over-secured for purposes of section 506 of the Code. But if the "value" of the mortgages is less than the amounts due on the notes, the Bank is under-secured.

As a general rule, the value of collateral is to be determined as of the date the Petition under the Bankruptcy Code is filed. *In Re Adams,* 2 B.R. 313, 5 B.C.D.

1234 (Bkrtcy.M.D.Fla.1980); see Annotation, "Relevant Time for Valuation, under section 57(h) of the Bankruptcy Act (11 U.S.C. § 93(h)), of Security Held by Secured Creditor", 21 A.L.R.Fed. 289 (1974). However, it has also been noted that "the court has considerable discretion in determining the appropriate method of valuation." Weintraub and Resnick, *Bankruptcy Law Manual* (1980), P. 5.11(1) at 5–39. In the present case there was no valuation of the mortgages as of the date the Petition was filed, so that date cannot be used. There was a valuation 8 months after the Petition was filed, and this can be used as the approximate date as of the filing, because the collateral here has not been shown to depreciate rapidly and is fully insured by the federal government.

█ The Bank has the burden of proof on the issue of valuation in this case, especially since it is arguing for a different value than one which it stipulated was the fair market value of the collateral. See § 362(g) of the Bankruptcy Code, which says that the party seeking relief from the automatic stay has the burden of proof as to the debtor's equity in property, i.e. its value. Even if the evidence was viewed most favorably to the Bank and its argument that the face amount of the notes is the correct value of the mortgages, this value would total only $115,122.00. The Bank could not be oversecured based on this figure because it has already set off the sum of $116,676.15 as the amount of its debt on the date the Petition was filed.

In addition, this court does not think that the principal amount of the notes is a realistic value for the mortgages. The notes are merely a personal obligation of the debtor, and the debtor is proceeding under Chapter 7 of the Bankruptcy Code. By themselves, the notes are valueless; their only value arises from the amount of collateral used to secure them or the amount which is subject to setoff.

However, the amounts that were stipulated as the fair market values of 3 of the mortgages is also unrealistic as the actual value of the mortgages. Since the mortgages are federally insured, the remaining amount due on them will be paid in full if they are ever in default. It appears that at least one of these mortgages is currently in default and the entire amount of the loan can, thus, be recovered. There is no reason to automatically use the lower fair market value stipulated to by the parties because that may not be an accurate indication of the value that can be realized on these mortgages.

However, it does not appear that any of the mortgages were in default at the time the debtor's Petition was filed. Even now, the Bank alleges that only one mortgage is in default, and not all four. For those mortgages which are not in default, a lower value must be assigned because the interest rates thereon are very low by today's standards, i.e. below 9%. If the principal amounts could be paid before the maturity date of the mortgages, these amounts could be reinvested at a much higher rate of interest.

The valuation is further complicated because there has been no fair market value or principal amount due stipulated to by the parties as to the Taylor and Pellegrino mortgage. Without such information, a valuation by this court would be speculative. However, the difficult valuation problems presented by the parties need not be decided now, because the Bank has presented an alternative theory for its right to payment from the funds on deposit when the debtor filed its Petition.

The second theory advanced by the Bank is that it was over-secured on the date the Petition was filed, because it had a right of setoff under Sections 506(a) and 553 of the Code to the extent of its costs incurred up to the amount of $299,369.96. Under § 506(a) the Bank would be treated as having an allowed secured claim on property that is subject to setoff under § 553 of the Code but only to the extent of the amount subject to setoff. In order to determine the amount subject to setoff, § 553 must be consulted. That Section states in relevant part:

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, ...

None of the listed exceptions to the statute apply in this case. Thus, the requirements for a setoff are: 1) the debts must be mutual and 2) the claims of the creditor against the debtor and the debtor against the creditor must have arisen before the filing of the debtor's Petition. *In Re Slaw Construction Corp.,* 17 B.R. 744, 8 B.C.D. 986, 988 (Bkrtcy.E.D.Pa.1982); *In re Carpenter,* 14 B.R. 405, 8 B.C.D. 168, 169 (Bkrtcy.M.D.Tenn.1981).

In the present case the Bank argues that the debts are mutual because, as of the date the Petition was filed, the debtor owed the Bank the sum of $116,676.15 for loans evidenced by promissory notes, and the Bank owed the debtor $299,369.96, because this was the sum the debtor had on deposit in the Bank. The Bank also argues that the post-petition interest and counsel fees are claims which arose pre-petition because a specific liability to pay them had accrued even though the amount of the liability was uncertain.

The following analysis is given in 4 *Collier on Bankruptcy* (15 ed. 1981), p. 553.10 at 553–49 to 553–51:

—Claims Arising After Bankruptcy.

Generally speaking, the rights of parties under section 553 are adjusted as of the date on which the case is commenced. We have already seen that section 553(a) comprehends only "mutual debts and claims" and that debts owed to and claims against the debtor prior to bankruptcy cannot be set off against debts owed to or claims against the debtor's estate (as represented by the trustee) arising after bankruptcy. This is because the element of mutuality of obligation is lacking.

—Claims unmatured or unliquidated When the Petition Is Filed.

The right of setoff may be asserted in the bankruptcy case even though at the time the petition is filed one of the debts involved is absolutely owing but not presently due, or where a definite liability has accrued but is as yet unliquidated. Nor is it necessary that the debt sought to be set off be due when the case is commenced. Obviously, of course, claims not yet due, while usable for the purpose of setoff or for the purpose of allowability may not be the basis for an affirmative judgment.

Thus it is well settled that where, for example, a trustee lays claim to funds of the debtor on deposit with a bank; the bank may assert a setoff to the extent of its claim against the debtor on the latter's note, even though the debtor's obligation is not presently due.

And the liability of a director of an insolvent trust company for damages for gross neglect of his trust and duty in voting to make and ratify certain loans to irresponsible borrowers, when liquidated after bankruptcy, may be set off against the director's claim under a certificate of deposit. In all cases the burden of proof is on the one asserting the validity of the setoff. [footnotes omitted]

In the present case, the problem as to whether the debts of the Bank and the debtor are mutual is intertwined with whether the Bank's claim for post-petition interest and fees arose pre-petition. If the Bank's claim arose pre-petition, it would have a mutual claim against the debtor. On the other hand, if the nature of the Bank's claim cannot be denominated a "claim . . . that arose before the commencement of the case," the Bank's claim would not be mutual because it would only have a post-petition claim against the estate. *In Re Princess Baking,* 5 B.R. 587, 6 B.C.D. 842, 845 (Bkrtcy.S.D.Cal.1980); *In Re Shopper's Paradise, Inc.,* 8 B.R. 271, 278 (Bkrtcy. S.D.N.Y.1980).

There are several recent cases which discuss the nature of a claim which arises before the commencement of a case. See

*In Re Hill,* 19 B.R. 375, 9 B.C.D. 53 (Bkrtcy. N.D.Tex.1982), where the court held that a debtor farmer's right to a post-petition crop subsidy could not be set off against a pre-petition debt because the right to the crop subsidy had not accrued at the time the Petition was filed; *In Re Howell,* 4 B.R. 102, 7 B.C.D. 1 (Bkrtcy.M.D.Tenn.1980), where the court held that a right of setoff cannot be asserted against future, unmatured payments due to the debtor; *In Re Rowen,* 15 B.R. 834, 8 B.C.D. 549 (Bkrtcy.N. D.Ohio 1981), where the Social Security Administration could not claim a right of setoff against overpaid benefits to the debtor when no benefits were due to the debtor at the time of filing; *In Re Carpenter,* supra, 14 B.R. 405, 8 B.C.D. 168, where the court held that a bank failed to sustain its burden of proof as to its right to setoff because it did not demonstrate that deposits in the debtor's bank account were made pre-petition, and post-petition deposits would not be subject to setoff. These cases involved creditors' claims that were unmatured, unliquidated or contingent as of the date the Petition was filed.

■ In the present case, the Bank's claim for post-petition interest, counsel fees and costs is not an independent claim against the estate; it is related to and arises out of the Bank's claim for payment on the promissory notes.* The interest, fees and costs are a part of the Bank's claim for payment pursuant to the notes, and the Bank's claim for payment on the notes is clearly a pre-petition claim. The Bank's right to payment accrued when the notes were defaulted upon, and this occurred before the case was commenced in Bankruptcy Court. The right to interest under the notes is not a separate right to payment but is merely the automatic accrual of what was due to the Bank under the terms of the notes. Since the notes are the triggering factors for the Bank's claim, the interest, fees and costs are not separate claims, part of which were pre-petition and part of which were post-petition. The Bank's claim against Kennedy on the notes clearly arose pre-petition, and

the interest and fees which were provided for in the notes are a part of this claim.

Since the claim for post-petition interest arose before the commencement of the case, it is subject to setoff under § 553 of the Code. All rights to payment arising from these notes can be set off up to the amount of $299,369.96, because that was the amount on deposit at the Bank. Since the Bank's claim under the note is less than $299,-369.96, it is deemed to have an over-secured claim under § 506 of the Code, as of the date the Petition was filed.

The Bank can recover the post-petition interest provided for under the terms of its notes, because it had an over-secured claim on the date the Petition was filed. However, it is unclear whether this sum is $9,756.57, which was previously reserved, or $10,576.83, which is the sum the parties stipulated was the amount of interest which accrued from March 9, 1981 to November 9, 1981. This court will execute an order requiring payment of interest to the Bank upon a proper stipulation between the parties as to the amount due. If the parties cannot agree, a hearing will be scheduled so both parties may present their method of calculation of the interest.

The payment of attorneys' fees under the notes and the Bankruptcy Code, is not as clear and presents an additional problem. Attorneys' fees can be paid to the holder of a secured claim only to the extent "provided under the agreement under which such claim arose." 11 U.S.C. § 506(b). There must be a right to payment of these fees under the creditor's contracts with the debtor. *In Re Carey,* 8 B.R. 1000, 7 B.C.D. 310 (Bkrtcy.S.D.Cal.1981).

The contracts in the present case allow attorneys' fees as follows:

> Upon the occurrence of any default hereunder: (1) the holder shall have the right to take possession of the collateral and to sell all or any part thereof upon any exchange or at public or private sale at the option of the holder at any time or times without advertisement or demand

* See Section 101(4) of the Bankruptcy Code for a definition of "claim".

upon or notice to any Obligor (all of which are hereby waived), except such notice as is required by applicable statute and cannot be waived; with the right on the part of the holder or its nominee to become the purchaser thereof at any such sale, free from any such equity of redemption and from all other claims, and after deducting all legal and other expenses for maintaining or selling the collateral and all attorneys' fees, legal or other expenses for collection, sale and delivery, to apply the residue of the proceeds of such sale or sales to pay (or to hold as a reserve against) this note and all other liabilities of each Maker to the holder; and (2) the holder shall have the right, immediately and without further action by it, to set off against this note all money owed by the holder in any capacity to each Obligor, whether or not due, and also to set off against all other liabilities of each Maker to the holder all money owed by the holder in any capacity to each Maker; and the holder shall be deemed to have exercised such right of set-off and to have made a charge against any such money immediately upon the occurrence of such default even though such charge is made or entered on the books of the holder subsequent thereto.

The Bank argues that this clause allows it to recover attorneys' fees and costs in collecting the loan no matter what type of collection process or setoff procedure is used. However, under this clause, the Bank has 2 alternatives in the event of default— it can repossess and sell the collateral or it can set off all money held. The right to attorneys' fees under the agreement is stated only in the section concerning the sale of collateral and is not listed in conjunction with the exercise of a right to setoff.

■ ■ If there is any ambiguity in this document, it must be construed against the Bank as the drafter of the document. *In Re Dye Master Realty, Inc.,* 15 B.R. 932 (Bkrtcy.W.D.N.C.1981). Although the Bank might have meant to make all collection costs recoverable, such intent is not clearly stated in the promissory notes. The agreements must be interpreted against the Bank in this regard. Thus, this court holds that the contracts require the payment of attorneys' fees by the debtor only in the event that repossession and sale of collateral is necessary. Since there was no sale in this case, and the Bank only sought to exercise a right of setoff, no attorneys' fees can be recovered under the contracts. Since these attorneys' fees cannot be recovered under the agreements, they cannot be recovered under the terms of § 506(b) of the Bankruptcy Code.

■ There is an additional requirement under § 506(b) of the Code, in order to allow the recovery of attorneys' fees, i.e. that only "reasonable" fees can be recovered. The parties did not stipulate that the fees claimed by the Bank are reasonable; indeed, the Trustee makes a strong objection on this ground. The Bank has not provided any detailed documentation listing the precise nature of all work performed by its counsel, the hours expended and the rate of pay of each task performed by different people. See *Lindy Brothers Builders, Inc. v. American Radiator,* 540 F.2d 102, 108 (3 Cir. 1974) where the Third Circuit stated it would require such an itemization for payment of any attorneys' fees. Such documentation is absolutely required under Bankruptcy Rule 219(a) and § 506(b) of the Code before any award of attorneys' fees, even to creditors with secured claims, can be made. *In Re H. P. Tool Manufacturing Corp.,* 12 B.R. 600, 7 B.C.D. 1312 (Bkrtcy.E.D.Pa.1981). For this type of collection on a defaulted note, when the debtor is involved in bankruptcy proceedings, only documented hours can be reimbursed; there is no justification for allowing the attorneys a percentage of the debt collected.

■ Even though the notes signed by the debtor provided that the Bank would be reimbursed for its attorneys' fees, such a contractual provision is not a carte blanche for the Bank to charge the debtor *any* fee incurred, regardless of the nature and difficulty of the work performed. This is in accordance with the general American Rule

that attorneys' fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefore. *Summit Valley Industries, Inc. v. Local 112, United Brotherhood of Carpenters,* —— U.S. ——, 102 S.Ct. 2112, 72 L.Ed.2d 511 (1982). Although the debtor's contract with the Bank requires the payment of attorneys' fees, Section 506(b) of the Code imposes a requirement of reasonableness on these fees, consistent with the purposes of the Bankruptcy Code. The *Lindy Brothers* case, supra, 540 F.2d at 108, requires a clear specification of services performed in order for any court to make a determination as to the reasonableness of fees. These factors must apply whether the claim for attorneys' fees is based on statute or contract. The Bank and its attorneys have not provided any documentation which would indicate the type or quality of the work provided. The nature of the attorneys' services was merely the collection of debts due on several notes. This work does not require any particular expertise.

Without the required documentation, the Bank has failed to sustain its burden of proof that the fees, for which reimbursement is sought, are reasonable. This court gave the Bank additional opportunities to supplement its proof in this regard, but the Bank declined to do so. The proof cannot be presented by the attorneys' statement of the total amount due, and the bare assertion that this sum is reasonable. Therefore, this failure of proof is an additional ground for denying the Bank's claim for post-petition attorneys' fees.

Let an order be submitted in accordance with this opinion.