**Glenn FAIRCHILD, Ida B. Fairchild, Plaintiffs,**

v.

**LEBANON PRODUCTION CREDIT ASSOCIATION, Defendant.**

**In the Matter of Glenn FAIRCHILD, Ida B. Fairchild, Defendants.**

**Bankruptcy No. 3–82–02176.**
**Adv. No. 3–82–0849.**

United States Bankruptcy Court,
S.D. Ohio, W.D.

July 1, 1983.

Christopher M. Hawk, Dayton, Ohio, Ray VanHorn, Xenia, Ohio, for debtors.

Mark Florence, Lebanon, Ohio, Dennis Pusateri, Wilmington, Ohio, for defendant.

Jill A. Smith, Columbus, Ohio, for Hinehold Hogs Market.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

### PRELIMINARY PROCEDURE.

This matter is before the Court upon Complaint filed by Debtors on 21 December 1982. On 5 January 1983, Defendant filed its Answer and also counterclaimed for relief from stay pursuant to 11 U.S.C. § 362(d). The Court considered the matter at a pretrial conference held 17 January 1983 and continued to 23 February 1983. The Court heard the matter on 30 March 1983 at which time the parties submitted a joint pretrial order which includes a lengthy stipulation of facts. The parties subsequently submitted legal memoranda. The following decision is based upon the parties' memoranda, the evidence adduced at the hearing, and the record, inclusive of the record in Debtors' estate file, numbered 3–82–02176, which is judicially noticed herein.

### FINDINGS OF FACT

Debtor Glenn Fairchild has been a farmer since 1956. Neither of the Debtors earn any income outside the farming operation. Debtors allege that high interest rates and several consecutive years of bad weather precipitated their bankruptcy filing, and that otherwise the farm possesses considerable profit potential. The Court notes that apparently a portion of Debtors' farmland is particularly susceptible to flooding.

Defendant is a creditor herein based upon a series of cash loans to Debtors made between 11 June 1976 and 8 January 1981.

Defendant's aggregate claim is for $242,-221.13 "as of February 23, 1983."

It is undisputed that Defendant's claim is secured by a duly perfected security interest in a certain 210 acre tract of real estate (owned by Debtors) and also by certain of Debtors' farm equipment. The parties have stipulated that the value of the farm equipment is $60,900.00. The parties, however, dispute the value of the subject real estate. Defendant submitted an estimate by an expert appraiser indicating that the value of the real estate is approximately $165,000.00 to $175,000.00, "say $170,000.00." Debtors scheduled the real estate as worth $300,-000.00. Debtors' witness regarding valuation of the property concurred with Debtors' higher estimate, but the Court notes that the witness only had limited training in property appraisals and did not persuasively rebut Defendant's testimony. For purposes of the decision herein, the Court is constrained to proceed with Defendant's valuation of $170,000.00 for the real estate.

Debtors have listed the 210 acre tract for sale and contemplate that proceeds from the sale will be utilized "to fund the plan," (i.e. to pay the claims secured by the real estate). The Court notes, however, that, although the viability of Debtors' proposed Plan appears contingent upon the proposed sale, Debtors have not received any firm offers for purchase of the tract.

Defendant holds the second mortgage on the subject real estate. Since the first mortgagee is oversecured, the Court notes that the first mortgagee's claim is therefore (to Defendant's disadvantage) accruing postpetition interest secured by the real estate. Note this Court's opinion in *Wolohan Lumber Co. v. Robbins (Matter of Robbins),* 21 B.R. 747, B.L.D. ¶ 68,826 (Bkrtcy.1982). The parties have stipulated that the first mortgagee's claim on 3 August 1982 (Debtors' Petition was filed on 16 August 1982) was $72,140.18, but that the claim, inclusive of postpetition interest, had risen to $77,-817.12 by 7 October 1982 (Debtor converted from Chapter 13 to Chapter 11 on 7 October 1982), and to $81,327.17 by 23 February

1983. The parties dispute which figure should be used to calculate "equity" and to determine whether Defendant's claim is "adequately protected."

The parties also dispute whether Defendant's claim is also secured by Debtors' herd of hogs which, as stipulated by the parties, has a current value of $49,708.06. Defendant possesses a duly perfected security interest in Debtors' livestock, described in both the security agreement and financing statement (written as one document), in pertinent part, as follows:

6. All Cattle and Hogs. Not limited to Beef and brood sows.

7. All property similar to that listed above, which at any time may hereafter be acquired by the Debtor(s) including, but not limited to, all offspring of livestock, additions and replacements of livestock and poultry, and all feed to be used in fattening or maintaining said livestock and poultry.

8. All proceeds of the sale or other disposition of any of the property described or referred to under Items 3 to 7, inclusive above, and of any offspring, wool milk and poultry products derived from said property, together with all accounts receivable resulting from such sales.

Debtors contend that Defendant's claim is based upon notes entered into exclusively to finance their hog "feeder" operation. The "feeder" operation involved the purchase of piglets which Debtors then raised until they reached market weight. Debtors contend that in early 1981 Defendant refused to continue financing the feeder operation, and that Debtors therefore were "forced" to convert to a hog "breeder" operation, whereby Debtors bred their own herd. Debtors allege that none of the feeder hogs were used in the breeder operation, and that all the feeder hogs have been sold and Defendant appropriately reimbursed therefrom. Debtors argue that the conversion from a feeder to a breeder operation was "out of the ordinary course of business" and thereby removed Debtors' herd of

breeder hogs from Defendant's "after-acquired property clause" pursuant to O.R.C. 1309.06, which provides:

§ 1309.06 (UCC 9–108) When after-acquired collateral not security for antecedent debt.

Where a secured party makes an advance, incurs an obligation, releases a perfected security interest, or otherwise gives new value which is to be secured in whole or in part by after-acquired property, his security interest in the after-acquired collateral shall be deemed to be taken for new value and not as security for an antecedent debt if the debtor acquires his rights in such collateral either in the ordinary course of his business or under a contract of purchase made pursuant to the security agreement within a reasonable time after new value is given.

Debtors filed the instant Complaint because they were unable to market their hogs due to the uncertainty of Defendant's interest. Debtors pray that this Court determine that Defendant's security interest in Debtors' "after-acquired" hogs does not extend to Debtors' present herd of breeder hogs acquired "outside of the ordinary course of business." In the alternative, Debtors pray that they be permitted to sell the hogs free of any interest Defendant may have in order to permit the sale of hogs when they reach their optimum market price and also to permit reinvestment of proceeds therefrom into continued breeding and maintenance of the herd.

Debtors argue that the sale of the hogs as they achieve market weight, and the use of the cash proceeds resulting therefrom, will not impair Defendant's secured position. Debtors allege that Defendant is oversecured by the hogs, farm equipment and 210 acre tract, and that any sale of the hogs for reinvestment in maintenance of the herd will "merely" involve the equity Debtors' have accumulated in their herd. Debtors also argue that, even if Debtors possess no equity in the herd, Debtors can adequately protect Defendant's interest in the herd by maintaining the herd at a minimum of approximately 225 hogs.

Debtors also argue that, if Defendant is deemed secured by Debtors' hogs, any attachment of Defendant's filed security interest in after-acquired property within ninety days of Debtors' Petition filing constitutes "an intolerable preference to [Defendant] under 11 U.S.C. § 547(c)(5) and (e)(3)." Debtors allege that Debtors' herd has increased in value because of births and an increase in the herd's aggregate weight. Debtors allege that the approximate value of the herd was $20,000.00 on 3 May 1982; $30,000.00 on 3 August 1982; and $49,000.00 (as stipulated by the parties) on 30 March 1983. The Court notes that Debtors only began their breeding operation with a small herd in early 1981 and that Defendant has not rebutted Debtors' allegations regarding the increase in the herd's value, which *prima facie* appear to be based upon reasonable estimates. Given the present size of the herd and the relatively short period that Debtors have engaged in a "breeder" operation, the Court is constrained to accept the various valuations of the herd for purposes of determination herein.

In response, Defendant argues that, although Debtors have converted from a feeder to a breeder operation, Debtors have, at all times relevant to determination herein, been hog farmers, and have conducted all their herd acquisitions "in the ordinary course of their business of hog farming." Defendant further argues that its perfected security interest in "all hogs," now and after-acquired, speaks for itself. The Court notes that it is undisputed that Defendant's security interest is duly perfected. The Court also notes that apparently there are no other secured interests in Debtors' herd of hogs.

In addition, Defendant counterclaims for relief from this Court's automatic stay so that Defendant may proceed with a prepetition foreclosure and replevin action against the subject collateral, respectively. This action was commenced on 12 July 1982 and is presently pending in the Common Pleas Court of Greene County, Ohio, under the caption *Lebanon Production Credit Associa-*

*tion v. Glenn Fairchild, et al.,* Case No. 82–CV–504.

In support of its request for relief from stay, Defendant essentially argues that its claim is inadequately protected. Defendant posits that Debtors possess no equity in the subject collateral. Defendant further argues that its secured position in Debtors' 210 acre tract is gradually being eroded by the senior mortgagee's accrual of postpetition interest. Defendant emphasizes that its claim was accelerated on 10 January 1982 (prior to Debtors' Petition filing) and apparently contends that relief from the automatic stay should be more liberally granted to permit collection of an accelerated debt, despite the specific statutory right of a Chapter 11 debtor to "cure" an accelerated obligation. *See* 11 U.S.C. § 1124.

Defendant also denies that any "perfection" in Debtors' herd of hogs which may have occurred within ninety days of Debtors' Petition filing was preferential. Defendant cites considerable case law under the previous Bankruptcy Act (former Title 11 of the United States Code) indicating that a trustee in bankruptcy could not avoid perfection through an after-acquired property clause as preferential under the Bankruptcy Act.

The Court also notes that the parties entered into an Agreement dated 28 January 1983 to permit sale of the marketable hogs free and clear of Defendant's lien during the pendency of the instant decision. The Agreement provides that Debtors may use 35% of the proceeds "to continue their farm operation," and that the remainder of the proceeds is to be escrowed to enable distribution in accordance with the decision herein.

### DECISION AND ORDER

#### I

The threshold question before the Court is whether Defendant's claim is secured by Debtors' breeder hogs. The Court reiterates that it is undisputed that Defendant's security interest in all "after-acquired hogs" was duly perfected, and that the only

issue to be resolved is whether Debtors' conversion from a feeder to a breeder operation resulted in the acquisition of hogs "out of the ordinary course of business" and therefore out of the scope of Debtors' after-acquired property clause pursuant to O.R.C. § 1309.06 [U.C.C. 9–108].

It is the finding of the Court that Debtors' acquisition of their breeder hogs was entirely routine and in the ordinary course of the business of a hog farm. A mere change in farming operations should not alone divest a secured creditor of collateral which otherwise unequivocally secured the creditor's claim. A conclusion to the contrary would have the potential to disrupt routine financing arrangements on a large scale, and also would encourage debtors to change their mode of operation for the sole tactical purpose of divesting creditors of collateral. This Court believes that it is in the ordinary course of the business of a hog farm to acquire hogs, and that it is irrelevant whether such hogs were acquired by feeding or breeding.

#### II

The next basic issue before the Court is whether Defendant received a "preferential transfer" of property by securing an interest in the hogs "acquired after" ninety days before Debtors' Petition filing. 11 U.S.C. § 547.

11 U.S.C. § 547(e)(3) incorporates a basic truism of Article Nine of the Uniform Commercial Code by providing that a "transfer" by perfection cannot occur until the moment of attachment. Apparently Debtors contend that perfection in the hogs born within ninety days of Debtors' Petition filing did not occur until the birth of the hogs because Defendant's interest had not previously attached. Debtors apparently argue that the increase in the aggregate value of the hogs during the ninety day period preceding the date of Debtors' Petition filing also constitutes a preferential transfer as calculated in the exception of 11 U.S.C. § 547(c)(5).

11 U.S.C. § 547(c)(5) provides that a perfected security interest in inventory (i.e. a "floating lien") may be statutorily deemed preferential if the "position" of the security interest "improved" during the ninety day period preceding the debtor's petition filing. Such "improvement of position" is calculated by a formula which seeks to determine any decrease in a creditor's unsecured position, typically by an increase in the "value of all security interest for such debt," as is alleged herein.* 11 U.S.C. § 547(c)(5); *See generally,* 4 Collier on Bankruptcy, 15th Ed. ¶¶ 547.49[7]–[7.2], and discussion in Richard F. Duncan, "Preferential Transfers, the Floating Lien, and Section 547(c)(5) of the Bankruptcy Reform Act of 1978," 36 Ark.L.Rev. 1 (1983). 11 U.S.C. § 547(a)(1) specifically defines the term, inventory, to include "livestock held for sale." The Court also notes that a debtor in possession bears the burden of proof to show, by a preponderance of the evidence, that there was an improvement in the position of a secured creditor. *In re Ken Gardner Ford Sales, Inc.,* 10 B.R. 632 (Bkrtcy.E.D.Tenn.1981).

It is the opinion of this Court that these provisions are inapplicable to the instant situation. Debtors essentially allege that a preferential transfer resulted from an increase in the value of a herd of livestock which existed prior to the preferential period and for which there were no additions from outside the herd. In this situation, it is the very nature of the collateral to increase in value. The "mere" increase in the value of existing collateral cannot justify a preferential transfer. There must also be a "transfer." 11 U.S.C. § 547(b) and (c). In this case, allowing for gestation, Defendant's rights in the entire herd attached prior to the preferential period, and any increase in the herd's value was "merely" an increase in the value of collateral in which Defendant's interest has previously attached. *Note* 69 Am.Jur.2d Secured Transactions §§ 300 and 337. 11 U.S.C. § 547(c) is only applicable as an *exception* to 11 U.S.C. § 547(b). In this case, there was no transfer during the preferential period, and 11 U.S.C. § 547(b) is thus not dispositive. If Debtors had continued their feeder operation and acquired new feeder hogs during the preferential period, the acquisition of the feeder hogs would have constituted a transfer as contemplated within 11 U.S.C. § 547(e). The instant situation is distinguishable, and no creditors were "prejudiced" by a "mere" increase in the herd's value, Defendant's interest having attached therein prior to the ninety day preferential period.

### III

The ultimate issue before the Court, therefore, is whether Defendant's secured claim in the hogs, farm equipment, and real estate is adequately protected. The issue of adequate protection is pertinent herein for determination of the underlying legal issues: first, whether relief from stay should be granted pursuant to 11 U.S.C. § 362(d)(1); second, whether Debtors should be permitted to reinvest the cash collateral resulting from the sales of hogs into the operation of Debtors' farm pursuant to 11 U.S.C. § 363(c)(2)(B); and, third, whether Debtors should be entitled to unconditional use of Defendant's collateral pursuant to 11 U.S.C. § 363(e).

Based upon the Court's findings of fact, the value of Debtors' collateral has risen marginally since the inception of Debtors' bankruptcy proceeding. The respective (rounded) figures are:

| Value of date of: | Petition filing | Hearing of 3/30/83 |
|---|---|---|
| Hogs | $30,000.00 | $49,900.00 |
| Farm Equipment: | $60,900.00 | $60,900.00 |
| Junior lien on 210 acre tract: | $97,900.00 | $88,500.00 |
| Aggregate Collateral: | $188,800.00 | $199,300.00 |

It is the opinion of the Court, however, that these estimates are too close to be particularly reliable in the context of adequate protection. Valuation of the subject collateral, without an actual sale, is, at best, an educated guess; and protection of Defend-

---

* In this regard, the Court notes that any preference Defendant might arguably possess would be offset by the accrual of interest on the senior lien in the real estate.

ant's secured position cannot be entirely premised on figures which, by their very nature, are subject to imprecision. In addition, the figures indicate that the amount of Defendant's secured claim is not constant. Instead, the value of Defendant's junior lien in the real estate is declining, but is being offset by an apparent increase in the value of the livestock. There is no evidence of record, however, to support a finding that the value of the livestock will increase in the future. To the contrary, Debtors' Complaint indicates that Debtors presently propose to maintain the herd at 225 head, thus "leveling off" the value of the herd.

■ A determination of the amount of a secured claim in one aspect of a bankruptcy proceeding is not necessarily *res judicata* in other aspects of that proceeding. 11 U.S.C. § 506(a). A creditor bargains for the risk that collateral securing a claim may increase or decrease in value. The automatic stay does not freeze the amount of a secured claim, and instead a secured creditor assumes any postpetition loss or gain to collateral (though the Code does grant a statutory right of recourse for any resulting unsecured portion, 11 U.S.C. § 1111(b)). In this case, Defendant's secured position appears to be marginally improving, but such improvement could ultimately prove to be ephemeral. The burden of proof in the instant adequate protection questions is on Debtors, and the instant record simply does not substantiate that Defendant's secured position will be protected in the future.

In essence, Defendant, as an undersecured creditor, is being asked to permit its junior lien to erode while Debtors attempt to reorganize by the sale of Defendant's other collateral. Furthermore, although such reorganization is apparently contingent upon sale of the subject real estate, no binding commitments have been obtained despite the fact that Debtors filed their Petition over ten months ago.

■ Determinations of adequate protection, however, are, in the present context, merely preliminary to the basic issues which must be confronted in any business reorganization. A determination of ade-

quate protection merely indicates that the *status quo* of a creditor's secured position can be maintained. The real question in any Chapter 11 is not whether a debtor is capable of maintaining the *status quo* (which typically is insolvency), but should be what are the prospects for retirement of debt. In the overall scheme of Chapter 11, adequate protection is not sufficient, and primary concern should instead be directed toward the content and viability of the plan of reorganization.

■ In this case, although adequate protection does not presently exist *in futuro,* it is the opinion of the Court that Debtors may offer adequate protection by guaranteeing the position of Defendant's junior lien and by assuring at least the potential of successful reorganization by binding sale of the 210 acre tract. These "bandaid" measures would permit the Court to proceed with the ultimate question of plan confirmation.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Defendant's claim will be temporarily ADEQUATELY PROTECTED for purposes of proceeding with reorganization IF, pursuant to the Court's power to condition the automatic stay in 11 U.S.C. § 362(d), Debtors maintain their herd of breeder hogs at a minimum of 225 head, and also, within forty-five days of the date that this decision is journalized, pay all accrued postpetition interest on the senior lien and keep such interest current thereafter, and also submit proof of a binding contract of sale of the subject real estate within the same forty-five day period.

IT IS HEREBY ORDERED that Debtors notify the Court and Defendant if these conditions cannot be satisfied.

IT IS FURTHER ORDERED that, pursuant to the Court's power to condition use of collateral in 11 U.S.C. § 363(e), if Debtors choose to attempt to satisfy these conditions, proceeds from the sale of hogs may be applied only to maintain the herd and/or retire debt or accrued interest on the subject real estate.

IT IS FURTHER ORDERED that, if the subject real estate is sold within the prescribed forty-five day period, that the claim of the senior lienholder be immediately paid in full upon completion of the sale.

