In re VACUUM CLEANER CORP. OF AMERICA, Debtor.

MARYLAND NATIONAL INDUSTRIAL FINANCE CORPORATION, Plaintiff,

v.

The VACUUM CLEANER CORPORATION OF AMERICA, t/a Cordomatic, Defendant.

Bankruptcy No. 83–02462G.
Adv. No. 83–1828G.

United States Bankruptcy Court, E.D. Pennsylvania.

Oct. 11, 1983.

---

Robert A. Kargen, Paul A. Patterson, White & Williams, Philadelphia, Pa., for plaintiff, Md. Nat. Indus. Finance Corp.

Melvin Lashner, Melvin Lashner Associates, Philadelphia, Pa., for defendant, The Vacuum Cleaner Corp. of America, t/a Cordomatic.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

In this action for relief from the automatic stay we have resolved two motions filed by the plaintiff, Maryland National Industrial Finance Corporation ("Maryland National"). The first motion seeks summary judgment while the second requests that certain defenses and counterclaims asserted by defendant, the Vacuum Cleaner Corporation of America ("the debtor"), be stricken. For the reason stated herein we will deny the motion for summary judgment but grant the motion to strike.

The facts of this case are as follows:[1] The debtor filed a petition for reorganization under chapter 11 of the Bankruptcy Code ("the Code") on June 14, 1983. The debtor then commenced an application on June 21, 1983, seeking authorization to use cash collateral. A hearing was held on July 6, 1983, at the conclusion of which we entered an order denying the requested relief predicated on a finding that the security interest of Maryland National in the cash collateral was not adequately protected. Maryland National thereupon sought relief from the automatic stay by filing a complaint initiating the instant action. Maryland National alleges that it loaned the debtor a substantial amount of money in exchange for which the debtor granted it a security interest in certain realty and personalty. Maryland National contends that its security interest is not adequately protected. The debtor's answer to the complaint asserts, *inter alia,* the affirmative defenses of a breach of the loan agreement, a failure of consideration under the loan agreement, and "the doctrine of unclean hands."[2] The debtor also raises certain counterclaims based upon the breach of a fiduciary duty by Maryland National to deal fairly with the debtor under the loan agreement, breach of contract, interference with Continental and business relations, defamation and misrepresentation.

Immediately upon the filing of the petition for reorganization an automatic stay arises which generally bars all debt collection efforts against the debtor or the prop-

---

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052 (effective August 1, 1983).

2. In the debtor's answer these are the fourth, fifth and sixth affirmative defenses.

erty of the bankruptcy estate. 11 U.S.C. § 362(a). Maryland National commenced proceedings in this court pursuant to § 362(d) to modify the stay in order to foreclose its security interest in the debtor's collateral. Section 362(d) provides as follows:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

In moving for summary judgment Maryland National asserts that its security interest is not adequately protected within the meaning of § 362(d)(1). Maryland National contends that summary judgment is appropriate since the issue of adequate protection was resolved at the hearing on the use of cash collateral and that collateral estoppel precludes relitigation of this issue. In summarizing collateral estoppel, the Restatement of Judgments § 68(1) (1942) states that "[w]here a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action. . . ." The elements of collateral estoppel have been stated as follows:

"[T]here are at least four requirements which must be met before collateral estoppel effect can be given to a prior action: (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) That issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment."

*In Re McMillan*, 579 F.2d 289, 291–92 (3d Cir.1978).

In resolving the prior adversary action we determined the amount of the indebtedness and the value of the collateral in light of the nature of the dispute, to wit, the debtor's request for the use of cash collateral. In the instant adversary proceeding we must determine the size of the debt and the worth of the collateral in light of the purpose of this controversy which is a request for relief from the automatic stay. In determining the value of the collateral with an eye toward the purpose of the valuation we are merely following the mandate of 11 U.S.C. § 506(a) which states as follows:

§ 506. Determination of secured status

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

The Code provides for flexibility under § 506(a) hearings in valuing collateral to afford the court discretion to select in each situation the proper standard of valuation— e.g., liquidation value, going concern value, replacement value—and to provide for appreciation or depreciation in the value of the property as well as to account for changes in the amount of the indebtedness. The Code's legislative history expresses these concerns in the following language:

The section [§ 361] does not specify how value is to be determined, nor does it specify when it is to be determined. These matters are left to case-by-case

interpretation and development. It is expected that the courts will apply the concept in light of facts of each case and general equitable principles. It is not intended that the courts will develop a hard and fast rule that will apply in every case. The time and method of valuation is not specified precisely, in order to avoid that result. There are an infinite number of variations possible in dealings between debtors and creditors, the law is continually developing, and new ideas are continually being implemented in this field. The flexibility is important to permit the courts to adapt to varying circumstances and changing modes of financing.

Neither is it expected that the courts will construe the term value to mean, in every case, forced sale liquidation value or full going concern value. There is wide latitude between those two extremes. In any particular case, especially a reorganization case, the determination of which entity should be entitled to the difference between the going concern value and the liquidation value must be based on equitable considerations based on the facts of the case. It will frequently be based on negotiation between the parties. Only if they cannot agree will the court become involved.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 339, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6295. The Senate Report contains similar language:

> The section [§ 361] specifies . . . means of providing adequate protection . . . which may require an approximate determination of the value of the protected entity's interest in the property involved. The section does not specify how value is to be determined, nor does it specify when it is to be determined. These matters are left to case-by-case interpretation and development. In light of the restrictive approach of the section to the availability of means of providing ade-

quate protection, this flexibility is important to permit the courts to adapt to varying circumstances and changing modes of financing.

Neither is it expected that the courts will construe the term value to mean, in every case, forced sale liquidation value or full going concern value. There is wide latitude between those two extremes although forced sale liquidation value will be a minimum.

In any particular case, especially a reorganization case, the determination of which entity should be entitled to the difference between the going concern value and the liquidation value must be based on equitable considerations arising from the facts of the case. Finally, the determination of value is binding only for the purposes of the specific hearing and is not to have a res judicata effect.

S.Rep. No. 95–989, 95th Cong. 2d Sess. 54, *reprinted in* 1978 U.S.Code Cong. & Admin. News 5787, 5840. The final statement quoted from the Senate Report espouses the logical predicate for flexibility in valuation in bankruptcy proceedings: "the determination of value is binding only for the purposes of the specific hearing and is not to have a *res judicata* effect." *Id.*[3] We adopt this principle.

■ For the same reasons that *res judicata* is inapplicable to valuations in bankruptcy we find that the use of collateral estoppel is likewise inappropriate. As the terms are most commonly used "*res judicata*" bars relitigation of the same cause of action while collateral estoppel bars the redetermination of an issue previously litigated, although collateral estoppel is often defined as but one facet of the broader concept of *res judicata*. 1B *Moore's Federal Practice* ¶ 0.401, 4 and 722 (2d ed. 1983). From its context in the Senate Report quoted above in part, we believe the term *res judicata* was used in its broader sense to include collateral estoppel. Thus, under the

---

**3.** *See also* 2 *Collier on Bankruptcy* ¶ 361.02, 361–15 (15 ed. 1982) which states that "appraisal is an 'inexact science' and the language of section 506(a) makes it clear that findings as to value will not have a res judicata effect." *See also, Fairchild v. Lebanon Production Credit Assoc.* (*In Re Fairchild*), 31 B.R. 789 (Bkrtcy. S.D.Ohio 1983).

Code *res judicata* and collateral estoppel are generally inapplicable to preclude redeterminations of the value of property.

Maryland National cites one bankruptcy case where collateral estoppel was applied to preclude a redetermination of the value of property. *In Re Bohrer,* 19 B.R. 958 (Bkrtcy.E.D.Pa.1982). In that case the debtor filed several applications on the same day to avoid liens under 11 U.S.C. § 522(f). Two creditors responded and a hearing on one application was scheduled for March 10 while the other was scheduled for the following day. Predicated upon its determination of the value of the property, the court established at the hearing on the first application that the lien could not be avoided since the debtor's exemptions were not impaired. At the hearing on the second request for lien avoidance the other creditor urged the application of collateral estoppel to bar relitigation of the issue of valuation. The court held that relitigation was barred under the doctrine. Notwithstanding what we have said above, we agree with this result for the reasons that the issues involved were identical, *and* the date as to which the property was to be valued for each application was the same date. *See Tarrant v. Spenard Builders Supply, Inc. (In Re Tarrant),* 19 B.R. 360 (Bkrtcy.D. Alaska 1982) (holding that in a § 522(f) lien avoidance action the proper valuation date is the date of the filing of the petition for relief under the Code).

■ On the other hand, in addressing the motion to strike we note that the legislative history of 11 U.S.C. § 362 and the case law state that a hearing on an action for relief from the automatic stay is typically not the proper forum for hearing counterclaims and third party actions. *LaSalle National Bank v. Harrow Leasing Corp. (In Re Harrow Leasing Corp.),* 32 B.R. 688 (Bkrtcy.E.D.Pa. 1983); *Belles Construction Co. v. Biller (In Re Biller),* 27 B.R. 206 (Bkrtcy.M.D.Pa. 1982). As stated in the legislative history:

> [A]t the expedited hearing under subsection [362](e), and at hearings on relief from the stay, the only issue will be the lack of adequate protection, the debtor's equity in the property, and the necessity of the property to an effective reorganization of the debtor, or the existence of other cause for relief from the stay. This hearing will not be the appropriate time at which to bring in other issues, such as counterclaims against the creditor, which, although relevant to the question of the amount of the debt, concern largely collateral or unrelated matters. This approach is consistent with that taken in cases such as *In re Essex Properties, Ltd.,* 430 F.Supp. 1112 (N.D.Cal.1977), that an action seeking relief from the stay is not the assertion of a claim which would give rise to the right or obligation to assert counterclaims. Those counterclaims are not to be handled in the summary fashion that the preliminary hearing under this provision will be. Rather, they will be the subject of more complete proceedings by the trustee to recover property of the estate or to object to the allowance of a claim. However, this would not preclude the party seeking continuance of the stay from presenting evidence on the existence of claims which the court may consider in exercising its discretion. What is precluded is a determination of such collateral claims on the merits at the hearing.

S.Rep. No. 95–989, 95th Cong., 2d Sess. 55, *reprinted in* 1978 U.S.Code Cong. & Admin. News 5787, at 5841. This area of the law has been aptly summarized as follows:

> Although defenses or counterclaims may be related or, to an extent, be plausibly relevant to any determination of the amount of debt due if they are based upon allegations such as misapplication or wrongful receipt of funds, breach of contract or various miscellaneous alleged contractual duties, or fraud or false representations, they are related or relevant only in the sense that, if successfully maintained, they would ultimately effectuate a reduction or set-off in the overall debt-credit relationship between the parties. These type of matters and claims really do not go to the validity and amount of the specific debt or lien itself.

*United Companies Financial Corp. v. Brantley,* 6 B.R. 178, 185 (Bkrtcy.N.D.Fla.1980).

We have summarized above the defenses and claims that Maryland National seeks to strike and we find that, although these matters are related to the relief requested at bench, they do not go to the essence of the action for relief from the stay. Although the debtor has conceded the principles of law outlined above, it asks that we exercise our discretion to hear the defenses and claims at issue. We decline to do so since those matters will unduly delay and complicate the resolution of the request for relief from the stay. Consequently, we will grant the motion of Maryland National to strike the affirmative defenses and counterclaims of the debtor.