**In re ONEIDA GRAIN CO., Debtor.**

**Richard E. BARBER, Trustee, Plaintiff,**

v.

**FIRST MIDWEST BANK/WESTERN ILLINOIS, N.A., Defendant.**

Bankruptcy No. 93–80976.
Adv. No. 95–8110.

United States Bankruptcy Court,
C.D. Illinois.

Nov. 8, 1996.

John P. Harris, Bozeman, Neighbour, Patton & Noe, Moline, IL, for Defendant.

B. Douglas Stephens, Caroline K. Bawden, Wessels, Stojan & Stephens P.C., Rock Island, IL, for Plaintiff.

## OPINION

WILLIAM V. ALTENBERGER, Chief Judge.

An involuntary petition was filed against the Debtor, Oneida Grain Co. (ONEIDA) on April 21, 1993. Pursuant to Chapter 7 of the Bankruptcy Code an Order for Relief was entered on June 10, 1993. The Bankruptcy Trustee (TRUSTEE) sued the Defendant, First Midwest Bank/Western Illinois, N.A. (BANK) under § 547 of the Bankruptcy Code, 11 U.S.C. § 547, to recover alleged preferential loan payments paid to the BANK during the one year period prior to the bankruptcy filing. There are three issues before the Court. If this Court finds for the BANK on any of the three issues, the TRUSTEE's complaint must be denied.

■ 1. Were the payments made while ONEIDA was insolvent. § 547(b)(3). On this issue the TRUSTEE has the burden of proof.

■ 2. Were the payments made in the ordinary course of business. § 547(c)(2). Here the BANK has the burden of proof.

3. In the context of whether the BANK improved its position during the one year period before the filing of the bankruptcy, what were the values of certain assets, one year before the filing and on the date of the filing. § 547(c)(5). Here, there is an issue as to who has the burden of proof.[1]

1. While it has been suggested that the burden is on the trustee, David Carlson, *Security Interests*

Otis A. Anderson and members of his family owned and operated three businesses: ONEIDA, Anderson & Mandle Grain Co. (GRAIN), and Anderson & Mandle Partnership (PARTNERSHIP). These three businesses had dealings among themselves. To prove ONEIDA's insolvency, the TRUSTEE called as a witness, Joseph Romolo (ROMOLO), a certified public accountant, who testified that in his opinion ONEIDA was insolvent on April 21, 1992. ROMOLO was not the CPA for ONEIDA, GRAIN, or PARTNERSHIP, but was retained by the TRUSTEE to review records and express an opinion. To reach his opinion, ROMOLO relied on ONEIDA's financial statements prepared as of May 31, 1992, by its CPA (Tr.Ex. # 16), a subsequently revised balance sheet also prepared as of May 31, 1992, by its CPA (Tr.Ex. # 20),[2] trial balances for GRAIN (Tr. Ex. # 21), ONEIDA's federal tax return for the year ending May 31, 1992, (Tr.Ex. # 17a), and GRAIN's federal tax returns for the years ending December 31, 1991, and 1992 (Tr.Ex. # 17C & B).

The financial statements originally prepared by ONEIDA's CPA show on the balance sheet an account receivable due from GRAIN of $285,773, total assets of $1,532,806, current liabilities of $1,359,843, and total stockholders equity of $172,963 (Tr.Ex. # 16). The revised balance sheet shows an increased account receivable due ONEIDA by GRAIN of $515,773, total assets of $1,762,806, current liabilities of $1,589,843, indicating an increased amount owed on BANK debt, and shareholders equity of $172,963. (Tr.Ex. # 20) Schedule L to ONEIDA's tax return for the year ending May 31, 1992, tracks TRUSTEE'S Exhibit # 16 (Tr. # 17a). Schedule L to GRAIN's tax return for the year ending December 31, 1991, shows it is barely solvent, while schedule L to its tax return for the year ending

December 31, 1992, shows it is insolvent by nearly $700,000.[3]

■ One of the elements of a preference under § 547(b) is that ONEIDA must have been insolvent at the time of the payments. Section 547 does not define the term "insolvent." However, Section 101(32)(A) provides that as to an entity other than a partnership, "insolvent" means a:

financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of—

(i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and

(ii) property that may be exempted from property of the estate under section 522 of this title . . .

As to a partnership, Section 101(32)(B) defines insolvency as a:

financial condition such that the sum of such partnership's debts is greater than the aggregate of, at a fair valuation—

(i) all of such partnership's property, exclusive of property [transferred, concealed or removed with intent to hinder, delay, or defraud such entity's creditors]; and

(ii) the sum of the excess of the value of each general partner's nonpartnership property, exclusive of property [that may be exempted from property of the estate under section 522], over such partner's nonpartnership debts . . . .

As stated in 4 *Collier on Bankruptcy*, para. 547.06 (15th ed.):

In short, a "balance sheet" test determines insolvency: (Footnote omitted) the debtor is insolvent when its liabilities exceed its assets.[3]

n. 3 *See House Report* at 312 ("An entity is insolvent if its debts are greater

---

*in the Crucible of Voidable Preference Law*, 1995 U.Ill.L.Rev. 211, and cases decided prior to the enactment of § 547(g) in 1984, placed the burden on the trustee, *Fairchild v. Lebanon Production Credit Ass'n.*, 31 B.R. 789 (Bkrtcy.S.D.Ohio 1983), there are cases placing the burden on the creditor, *In re Parker Steel Co.*, 149 B.R. 834 (Bkrtcy.N.D.Ohio 1992).

2. There is a question as to whether these financials were actually issued or were merely preliminary in nature.

3. Something occurred in 1992. But no one knows what or when. ROMOLO didn't know nor did the TRUSTEE or the BANK put on any evidence in that regard.

than its assets, at a fair valuation, exclusive of property exempted or fraudulently transferred. It is the traditional bankruptcy balance sheet test of insolvency."); *See also Constructora Maza, Inc. v. Banco dePonce*, 616 F.2d 573, 577 (1st Cir.1980) (construing definition of insolvent under former Bankruptcy Act) ("[A] 'balance sheet test' focuses not on the liquid funds available at the time of a transfer, but rather on the liquidation value of the debtor's assets compared to his current liabilities ... The determination of the 'fair valuation' of the debtor's assets at a specific time is at best an inexact science, and may often be impossible."); *Briden v. Foley*, 776 F.2d 379, 382 (1st Cir.1985) ("This balance sheet test focuses on the fair market value of the debtor's assets and liabilities within a reasonable time of the transfers. Asset valuation need not be exact. Assets should be reduced by the value of the assets not readily susceptible to liquidation and the payment of debts."). In determining whether a debtor's liabilities exceed its assets, contingent assets and liabilities should be reduced to their present or expected value. *In re Xonics Photochemical, Inc.*, 841 F.2d 198, 18 C.B.C.2d 711 (7th Cir.1988).

2 *Norton Bankruptcy Law and Practice*, § 32.10, in discussing this element, states:

Under Code § 547, a transfer that benefits a creditor is not a preference unless the debtor was insolvent when the transfer was made. The thrust of preference law is not to block or reverse the payment of debts by the bankrupt. Rather, it is to avoid transfers that diminish the estate and grant an advantage to one creditor over other similar creditors. If, at the time of the transfer, the creditor is capable of paying all of his debts in full, no preference occurs under this section in his decision to select one or several creditors for initial payment since presumably all claims will eventually be satisfied.

Although the requirement of insolvency fits well with the concept of preference, its presence as an element to be proved by the trustee often presents difficult problems in individual cases. To understand this, it is necessary to consider the standard of insolvency that is employed under the Code. (Footnotes omitted.)

After quoting § 101(32), (numbered as § 101(26)), it goes on:

As to partnerships, the Code requires computation of the partnership's assets plus the assets of any general partner in excess of that partner's separate debts.

The test established by this definition has been described as "balance book" insolvency. It is to be distinguished from equity tests of insolvency which focus on the debtor's current ability to pay his debts. Under the balance book test, whether debts are currently being paid is not the issue and, indeed, an individual or business may be insolvent despite the fact that all debts are paid when due. In the context of preference law, the choice of the balance book measure of insolvency has an obvious correlation to the purpose of the avoidance provision. If the individual's assets are sufficient to pay all debts, even a cash payment to one creditor would not, ultimately, create a preferential effect.

Although the balance book test can be easily defined, it is often difficult to apply. ....

Focusing on an account receivable owed to ONEIDA by GRAIN and an account receivable owed to GRAIN by PARTNERSHIP, ROMOLO reasoned that as PARTNERSHIP could not pay GRAIN, GRAIN could not pay ONEIDA, and therefore GRAIN's account receivable on ONEIDA's books was worthless, thereby making ONEIDA's debts exceed its assets, or insolvent. The BANK takes the position that the TRUSTEE failed to prove insolvency as ROMOLO's testimony is based upon an assumption of GRAIN's insolvency placed on top of an assumption of PARTNERSHIP's insolvency which are contrary to the signed financial statements of ONEIDA's CPA.

There are two reasons why the TRUSTEE failed to meet its burden of proof as to ONEIDA's insolvency. First, ROMOLO described the relationships between ONEIDA, GRAIN and PARTNERSHIP as a "House of Cards", if one fell there would be a "domino"

effect and they all would fall. He then concludes that as PARTNERSHIP could not pay GRAIN, GRAIN could not pay ONEIDA, making its account receivable due ONEIDA worthless, which in turn made ONEIDA insolvent by a balance sheet test.[4] For the purposes of determining insolvency in bankruptcy, ROMOLO's analysis is incomplete.

■ ROMOLO failed to consider the concept found in § 101(32)(B) that individual partners' assets should be considered in determining a partnership's insolvency. Illinois law also requires that general partners' assets be looked to, after partnership assets, to satisfy partnership debts. *See* 805 ILCS 205/10 and *Eastern Seafood Co., Inc. v. Barone*, 252 Ill.App.3d 871, 625 N.E.2d 664, 192 Ill.Dec. 509 (1993). No evidence was introduced as to PARTNERSHIP's individual partners' assets, nor was it considered by ROMOLO.[5]

Furthermore, ROMOLO concludes PARTNERSHIP was insolvent based upon the assumption posed to him by the TRUSTEE that PARTNERSHIP's only asset was a grain elevator which had no equity due to it being encumbered by a bank mortgage. There is nothing in the record to support the assumption that the grain elevator was PARTNERSHIP's only asset and that it was fully encumbered.[6] PARTNERSHIP could very well have had other assets, or the grain elevator could have had a higher value which provided equity, which could have been used to pay GRAIN.

■ Second, the balance sheet test is based on fair values which focus on fair market values. On the balance sheets (Tr. Ex. #16 & 20) relied on by ROMOLO, ONEIDA's equipment is shown at cost, less accumulated depreciation, not fair market value.[7] While it is possible that the fair market value of the equipment is the cost value indicated on the balance sheets, there was no evidence from which this Court could conclude that to be the situation.

In summary, the starting point is the one made in 2 *Norton Bankruptcy Law and Practice*, § 32.10:

> Although the requirement of insolvency fits well with the concept of preference, its presence as an element to be proved by

---

4. ONEIDA's balance sheets (Tr.Ex. #16 & #20) show shareholder equity of $172,963. If the account receivable of either $285,773 or $515,773 is removed from the asset side, ONEIDA is insolvent.

5. Through other matters before this Court, this Court is aware of facts that would indicate that the individual partners had insufficient assets or income to satisfy PARTNERSHIP debts. For example, Otis Anderson, a partner, was indicted and pled guilty to four felony counts in state court and was sentenced to eight years of incarceration. Lyle Anderson, another partner, filed a Chapter 7 case in bankruptcy. It would be inappropriate to make a finding based on facts outside the record. *In re Aughenbaugh*, 125 F.2d 887 (3d Cir.1942). This Court is not willing to decide the question of insolvency without direct evidence as to the partners' financial conditions.

6. No balance sheets or tax returns for PARTNERSHIP were offered or admitted into evidence. An officer of the BANK testified that the collateral for the six loans included a first mortgage on the grain elevator located in Andalusia, Illinois, owned by the PARTNERSHIP. After discussing all the various collateral, i.e. trucks, warehouse receipts, etc., he stated that was all the collateral the BANK had. Construing the Loan Agreement (Tr.Ex. #21) as giving the BANK a blanket security interest in all the PART-

NERSHIP's property, it could be concluded that the PARTNERSHIP did not have any other assets. However, this Court is not willing to come to such a conclusion in the absence of direct evidence as to the PARTNERSHIP's financial condition.

This Court is also aware that GRAIN is in bankruptcy, being the object of an involuntary petition filed in November of 1993 and adjudicated in January of 1994, some twelve to nineteen months after the time in question in this adversary proceeding. Again, it would be inappropriate for this Court to make a finding on a fact not in the record. Furthermore, it is not appropriate to assume that because GRAIN was apparently insolvent when it was adjudicated that it was insolvent approximately twelve to nineteen months earlier.

7. As stated in Vincent J. Love, *Understanding and Using Financial Data: An Ernst & Young Guide for Attorneys*, page 24:

> Assets are generally valued and shown on the balance sheet at historical cost, i.e., the price in dollars at the date acquired. In some instances and in certain industries, the assets may be valued either at the lower of cost or market, or at market. When these less conventional valuations occur, the financial statement will say so.

the trustee often presents difficult problems in individual cases. (Footnote omitted)

In the case before this Court those problems were magnified by the fact a chain reaction is involved, in that ONEIDA's insolvency depended on the insolvency of two other legal entities. The solvency of the last in the chain in turn depended in part on the financial condition of yet others, all of which are woven together in a maze which this Court cannot transverse due to a lack of proof.

Because the TRUSTEE did not prove ONEIDA's insolvency, he did not prove a preference under § 547. Therefore, there is no need for this Court to consider the other two issues raised in this adversary proceeding.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.